STEVEN D. FIELD AND FAITH A. FIELD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Field v. Commissioner
Docket No. 10035-80
United States Tax Court
T.C. Memo 1981-179; 1981 Tax Ct. Memo LEXIS 564; 41 T.C.M. (CCH) 1267; T.C.M. (RIA) 81179; April 14, 1981. Thomas F. Geraghty, for the petitioners. Val J. Albright, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' Federal income for the taxable years 1977 and 1978 in the amounts of $ 938 and $ 928, respectively. The only issue presented is whether petitioners are entitled to exclusions from gross income under section 117, [1] in the amounts of $ 3,600 for each of the taxable years 1977 and 1978, for stipends received from Northwestern University Medical School. FINDINGS OF FACT During the taxable years 1977 and 1978, petitioners Steven D. Field (hereafter referred to as petitioner) and Faith A. Field were husband and wife. At the time their petition was filed herein, petitioners resided in Wheeling, Illinois. Petitioners filed timely joint Federal income tax returns with the Internal Revenue *566 Service for the calendar years 1977 and 1978. Petitioner is currently a medical doctor, licensed to practice medicine in the state of Illinois. He received his full permanent license to practice medicine in the state of Illinois in August, 1978. Petitioner attended the University of Illinois Medical School from September, 1973 until June, 1977 when he was awarded his M.D. degree. However, as of June, 1977 petitioner had not completed the educational requirements for certification by the American Board of Psychiatry and Neurology. On or about September 13, 1976, petitioner made a written application to the Northwestern University Medical School for appointment to that school's program of graduate clinical training in the field of psychiatry. At all times here pertinent the graduate clinical training program required that before participation the participant must have received an M.D. or D.O. degree from an approved medical school or school of osteopathy, or have presented documentation that the participant had completed all the requirements for conferral of such degree; submitted the appropriate application form and been personally interviewed by the director of the graduate *567 clinical training program; and obtained proper medical licensure for graduate trainees from the state of Illinois. During 1977 and 1978, there were two kinds of licensure available from the state of Illinois for graduate medical trainees: (a) a full permanent license, or (b) a temporary license ("certificate of registration"). At all times here pertinent the acquisition of proper licensure from the state of Illinois prior to participation in the graduate clinical training program was the responsibility of the participant. On March 17, 1977, petitioner accepted an offer to participate in the graduate clinical training program in the field of psychiatry by executing a letter making an offer of participation to him. The initial period of participation in the program was for the period June 29, 1977, through June 30, 1978. Subsequently, and after completion of each preceding period of participation, petitioner continued to participate for succeeding periods in the program. During the first four months of the program (through November 1977), petitioner rotated among various general medical services. Beginning in November of 1977, he worked in the field of psychiatry, although *568 he occasionally performed a physical examination. During the early part of his residency, he worked with inpatients as a part of the inpatient psychiatric team. Later in his residency he worked with patients through the outpatient clinic and with pediatric inpatients. Petitioner was on 24-hour emergency calls six days per month during the first year, three days per month during the second year, and one day a month during the third year. During petitioner's participation in the graduate clinical training program from June 29, 1977, through December 31, 1978, petitioner was a resident in the graduate clinical training program for psychiatry assigned to Evanston Hospital, Evanston, Illinois. During this period petitioner received the following stipends: Period
Amount
6/29/77 through
12/31/77
$ 7,127.26
1/1/78 through
12/31/78
14,946.96
Amounts were paid semi-monthly to petitioner by North-western University during the specified periods. From the gross amount payable to petitioner for each semi-monthly pay period, Northwestern University deducted amounts for Federal Withholding Tax, Federal Insurance Contributions Act Taxes and State of Illinois Withholding *569 Tax. In addition to the monies received from Northwestern University, petitioner was entitled to participation in the McGaw Medical Center House Staff Insurance Plan (hospitalization, medical and surgical benefits, major medical); an annual paid vacation; professional liability insurance covering training assignments, paid sick leave and disability insurance benefits; an allowance for attendance at one medical meeting per year; and a suitable number of uniforms and the laundering of those uniforms. Participants in the graduate clinical training program were entitled to 14 days of annual paid vacation for those participants in the first year of clinical training and 21 days for those participants in the second and subsequent years. Participants in the graduate clinical training program during the year 1977 received stipends basically in accord with the following schedule: Year of Graduate
Clinical Training
Amount
First
$ 14,100
Second
14,900
Third
15,800
Fourth
16,900
Fifth
18,100
Sixth
18,900
During 1978 the amounts listed above were increased but the proportionate differences for the level of year in the program remained in existence. The graduate *570 clinical training program was designed to and did cover residents in many other specialties. Residents in these other specialties received the same fringe benefits and depending on their years in the program, the same compensation as residents in psychiatry. During the period July 1, 1977, through June 30, 1978, there were approximately 131 residents at Evanston Hospital. The average number of residents assigned through the graduate clinical training program in the field of psychiatry to Evanston Hospital was nine during the period June 28, 1977, through December 31, 1978, so that there were usually three residents for each of the second, third, and fourth year levels of participation. In order to be certified by the American Board of Psychiatry and Neurology, the petitioner was required to complete an accredited program of post-graduate training. Northwestern University Medical School's graduate clinical training program in psychiatry was approved by the American Board of Psychiatry and Neurology. Northwestern University Medical School and Evanston Hospital are related institutions, both being members of the McGaw Medical Center, an Illinois non-profit membership corporation. *571 Northwestern University Medical School was reimbursed by Evanston Hospital for the cost of the stipends Northwestern University Medical school paid petitioner. The graduate clinical training program in psychiatry participated in by petitioner during 1977 and 1978 required that petitioner undertake both classroom and clinical activities. Petitioner's classroom activities consumed from ten to fifteen hours per week, and an equal amount of time was expended in class preparation. Northwestern University is an educational institution within the meaning of section 170(b)(1)(A)(ii). Northwestern University Medical School is a part of Northwestern University. Evanston Hospital is an organization described in section 501(c)(3) which is exempt from tax under section 501(a). Other than as stated herein, no formal written contract existed between petitioner Steven D. Field and Northwestern University Medical School's graduate clinical training program during the years 1977 and 1978 in respect of petitioner's participation therein. OPINION We are again called upon to decide whether amounts received by a graduate physician who is a resident in a medical specialty are excludable *572 under section 117(a)(1). [2] In , we reexamined this area in some depth, concluding that "the facts here are not materially different from the facts in the dozens and dozens of similar cases that have been litigated in recent years." . We wearily and ineluctibly reach the same conclusion. In upholding the applicable regulations, [3] the Supreme Court held that scholarship or fellownship grants are relatively disinterested, no-strings educational grants with no requirement of any substantial quid pro quo running from the recipient to the grantor. . It has now been well established that, barring very, very unusual circumstances, the amounts paid a medical resident are not a relatively disinterested *573 no-strings attached grant. Even fairly significant variations in the integrally related educational and service components of a medical residency do not change this result. . The compensation and fringe benefits arrangements and the patient responsibility involved in this case bring it well within the applicable legal principles. , and . *574 Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) GENERAL RULE.--In the case of an individual, gross income does not include-- (1) any amount received-- (A) as a scholarship at an educational organization described in section 170(b)(1)(A)(ii), or (B) as a fellowship grant, including the value of contributed services and accommodations * * *.↩
3. SEC. 1.117-4. Items not considered as scholarships or fellowship grants. (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of section 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. * * *↩